**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| **ROSE PDX TRANSPORTATION, LLC,**<br><br>**Plaintiff,**<br><br>v.<br><br>**OVERTIME TOWING & TRANSPORT LLC,**<br><br>**Defendant.** | **Civil Action No.**<br><br>**VERIFIED COMPLAINT**<br><br>**(JURY TRIAL DEMANDED)** |

Plaintiff, Rose PDX Transportation, LLC ("Plaintiff" or "Rose PDX"), by and through undersigned counsel, makes the following Complaint against Defendant Overtime Towing & Transport LLC, ("Defendant" or "Overtime") and alleges as follows:

## PARTIES

1. Plaintiff is an Oregon limited liability company with a business address at 21926 NE Couch St., Gresham, OR 97030 and conducts business nationwide in interstate trucking. Plaintiff is not a citizen or resident of North Carolina.

2. Plaintiff is a single member LLC, whose single member is Mohammed Hashoosh, who is a citizen and resident of Oregon.

3. Defendant is a North Carolina limited liability company with a principal office address at 8411 Old Statesville Road, Charlotte, NC 28269, and performs vehicular towing. Defendant's Registered Agent is Northwest Registered Agent Service, Inc., which has a registered mailing address at 4030 Wake Forest Road, STE 349, Raleigh, NC 27609.

4. On information and belief, Defendant is a single member LLC, whose single managing-member is Leah Holmes, residing at 8411 Old Statesville Rd., Charlotte, NC 28269.

5. In the alternative, if Defendant has more than a single member, all members are, on

information and belief, citizens of North Carolina.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332. Complete diversity exists because Plaintiff and Defendant, including, on information and belief, all member(s) of the Plaintiff and Defendant, are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Personal jurisdiction is proper over Defendant because Defendant, and, on information and belief, the member(s) of Defendant, resides in and is a citizen of Mecklenburg County, North Carolina.

8. Additionally, specific personal jurisdiction is proper over Defendant because Defendant and its member(s) have sufficient minimum contacts in Mecklenburg County, North Carolina, and because the transactions or occurrences complained of herein took place in Mecklenburg County, North Carolina.

9. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendant and, on information and belief, the member(s) of Defendant, reside in the Charlotte, Mecklenburg County, North Carolina, which falls within the judicial district for the Western District of North Carolina, and all or a substantial portion of the acts or omissions giving rise to the claims herein occurred within that district.

## FACTUAL BACKGROUND

10. Rose PDX is a nationwide carrier providing transportation services across all 48 contiguous states.

11. Rose PDX engages in the transport of various goods, including, but not limited to, general freight, frozen food, fresh produce, seafood, dry freight, packaging and consumer goods

(including Amazon and FedEx shipments), and other non-hazardous freight.

12. Rose PDX operates year-round, including weekends and holidays, and, on average, engages in the aforementioned transportation services approximately 330 days per year.

13. On average, Rose PDX's trucks, including the truck at issue herein, generate revenue of approximately $500.00 per day.

14. Since on or about September 18, 2023, Rose PDX has leased a 2020 Freightliner tractor truck ("Truck") for use in Rose PDX's interstate trucking operations.

15. Prior to Defendant towing the vehicle, as alleged *supra*, the Truck functioned normally.

16. On or about December 14, 2025, one of Rose PDX's truck drivers had legally parked the Truck near 11699 Brier Village Lane, Charlotte, NC 28262, for purposes of the driver taking his required ten-hour break.

17. Signage present on private property near where the truck was parked warned that "ALL VEHICLES IMPROPERLY PARKED, INOPERABLE OR WITH INVALID OR MISSING LICENSE PLATES ARE SUBJECT TO BEING BOOTED AND, OR TOWED . . . ." See Exhibit 7.

18. The signage also referenced a tow fee "UP TO $8000." See Exhibit 7.

19. At the time the Truck was parked, it was operable and had a valid license plate affixed to it.

20. At the time the Truck was parked, it was legally, properly parked outside of a residential dwelling.

21. Plaintiff did not request that the Truck be towed.

22. On information and belief, no property owner or property manager requested that

the Truck be towed.

23. Plaintiff did not consent to the Truck being towed.

24. On information and belief, the Truck was not parked in a fire lane.

25. While the Rose PDX driver was taking his break and absent from the Truck, Defendant took possession, custody, and control of the Truck and towed it to Overtime's impound yard, located at 8411 Old Statesville Rd., Charlotte, NC 28269.

26. On information and belief, Overtime never provided appropriate legal justification to Rose PDX as to why the Truck was towed.

27. On December 15, 2025, Rose PDX contacted Overtime in an attempt to recover the Truck.

28. Overtime initially demanded payment of $8,400 plus credit card fees to release the Truck.

29. Ultimately, without providing explanation or justification for the rate change, Overtime agreed to accept payment of $6,720.00 to release the Truck. See Exhibit 1.

30. On December 16, 2025, Rose PDX paid $6,720.00 to Overtime for the purpose of releasing the Truck.

31. After payment for release of the Truck was made to Overtime, Plaintiff's driver attempted to start the Truck in Overtime's impound yard without success.

32. Initially believing the problem was battery related, Rose PDX contacted roadside service to perform a jump start on the Truck, but the attempt was unsuccessful.

33. Then, suspecting a possible starter issue, Rose PDX requested that Overtime tow the Truck to a local mechanic shop.

34. Overtime refused this request and advised Rose PDX to call another towing

company.

35. Rose PDX arranged for another towing company to transport the Truck to a local mechanic, Atom Truck Repair, LLC ("Atom").

36. On information and belief, no other person had possession, custody, and control of the Truck between when Defendant towed it on December 14 and when Plaintiff arranged for it to be towed to Atom on December 16, 2025.

37. Upon Atom's inspection of the Truck, Atom determined that the issue was not the battery or starter, but that the Truck was improperly towed by Overtime. More specifically, Atom determined—and Plaintiff agrees and alleges that:

a. The Truck is an automatic transmission vehicle that requires driveline disconnection before towing to avoid damage.

b. The driveline was not disconnected by Overtime during towing, with such disconnection only being performed by the second tow company that towed the Truck from Overtime's impound yard to Atom.

c. As a result of Overtime's failure to disconnect the Truck's driveline, the Truck's transmission and clutch were damaged and stuck.

38. Instructions for properly towing the Truck were clearly posted on the Truck itself. Namely, these instructions advised: "TOW WARNING AUTOMATIC TRANSMISSION – 1. REMOVE DRIVESHAFT (OR) 2. REMOVE ALL DRIVE AXLE SHAFTS (OR) 3. TOW WITH ALL DRIVE WHEELS RAISED – FAILURE TO DO SO WILL RESULT IN MAJOR TRANSMISSION DAMAGE." See Exhibit 6.

39. Industry standards require that towing companies follow the proper steps when towing a vehicle to avoid damage to the vehicle. In this case, that included disconnecting the

driveline.

40. Rose PDX also determined that the Truck sustained roof damage during the tow by Overtime, which, upon information and belief, was caused by the Truck striking one or more objects such as a tree or overhead structure while being towed.

41. None of the damage to the Truck, including, but not limited to, its inability to start or drive and the damage to the roof, existed prior to Defendant taking possession, custody, and control of the Truck.

42. On February 6, 2026, through a letter emailed and mailed to Overtime, Rose PDX requested payment from Overtime for damages to Rose PDX based on Overtime's actions and omissions concerning the Truck. To date, Overtime has not responded to Rose PDX's letter.

43. Rose PDX has been significantly damaged in an amount of or about $169,000.00, and growing, by Overtime's improper and negligent towing actions concerning the Truck. This includes, but is not limited to:

a. Unnecessary and excessive towing and retrieval fees from Overtime in the amount of $6,720.00. See Exhibit 1.

b. Attempted jump-start service and additional towing fees to transport the Truck from Overtime's impound yard to Atom in the total amount of $800.00.

c. Mechanical inspection by Atom in the amount of $641. See Exhibit 2.

d. Mechanical damage to the Truck requiring repairs in the amount of $31,321.88. See Exhibit 3.

e. Physical damage to the Truck's roof resulting in just under $2,000.00 for a temporary fix (see Exhibit 4) and requiring further repairs estimated at $6,700.00

f. Costs to fly the Rose PDX driver back to Oregon due to the inability of the driver to return home by using the Truck in the amount of $961.00. See Exhibit 5.

g. Until repair amounts can be paid, daily parking costs with Atom of $25/day, totaling present damages of $4,500, which increase daily.

h. Until repair can be made, insurance costs for the Truck of $1,200/month, totaling present damages of $7,800, which increase monthly.

i. Until repair can be made, monthly lease costs for the Truck of $2,777.05, totaling present damages of $16,662.30, which increase monthly.

j. Until repair can be made, lease late fees—incurred due to the financial hardship caused by the Truck being inoperable—of 277.71 per month, totaling present damages of $1,666.26, which increase monthly.

k. Operational downtime and lost profits related to the Truck in the amount of approximately $500/day, totaling present damages of approximately $90,000.00, which increase each day the Truck is inoperable.

l. Legal fees and costs to date of approximately $1,800.00.

**COUNT ONE**
**Negligence**

44. Plaintiff realleges and incorporates by reference all preceding paragraphs.

45. Overtime owed Rose PDX a duty to use reasonable care to not tow the Truck without proper legal authority

46. Additionally, Overtime owed Rose PDX a duty to use reasonable care to handle the Truck during towing so as to not cause damage the Truck.

47. Specifically, Overtime owed a duty to Rose PDX, pursuant to applicable industry standards, to disconnect the driveline prior to towing the Truck, so as to not damage the

drivetrain/transmission/clutch.

48. Overtime breached its duties to Rose PDX when it towed the Truck without sufficient legal authority.

49. Overtime breached its duties to Rose PDX when it did not disconnect the driveline on the truck prior to towing it, which caused damage to the Truck's drivetrain/transmission and clutch.

50. Overtime was negligent as set forth in the foregoing paragraphs and in one or more of the following non-exhaustive particulars:

a. Directly causing damage to the Truck by legally unauthorized towing and failure to properly tow the Truck without causing damage to the Truck;

b. Dereliction of duties by failing to exercise proper management or supervisory authority over any Overtime employees that caused damage to the Truck by legally unauthorized towing and failure to properly tow the Truck without causing damage to the Truck;

c. Failure to engage in the following types of mitigation:

i. releasing the Truck without unnecessary and excessive fees;

ii. towing the Truck from Overtime's impound yard to Atom or another local mechanic; and

iii. promptly resolving any disputes and damage reimbursement requests tendered by Rose PDX to minimize the Truck's operational downtime and Rose PDX's lost profits.

51. As an experienced towing company, Overtime knew or, in the exercise of reasonable care, should have known that if Overtime performed its towing duties negligently in

relation to the Truck, there was a foreseeable risk that Rose PDX, as a foreseeable plaintiff, would suffer damages.

52. As an experienced towing company, Overtime knew or, in the exercise of reasonable care, should have known that failing to disconnect the driveline prior to towing would cause reasonably foreseeable damage to the Truck.

53. The damage caused to the Truck was caused by Overtime's breaches of its duties to Rose PDX, and such damage was reasonably foreseeable by Overtime.

54. As a direct and proximate result of Overtime's negligence, Rose PDX has suffered damages in an amount in excess of $75,000.00, and increasing, exclusive of interest.

**COUNT TWO**
**Bailment**

55. Plaintiff realleges and incorporates by reference all preceding paragraphs.

56. Overtime accepted delivery and/or took exclusive possession of the Truck and had exclusive possession and control of the Truck when Overtime towed the Truck onto Overtime's impound yard and excluded the Rose PDX driver from taking possession of the Truck.

57. Overtime owed Rose PDX a duty to use reasonable care in keeping the Truck from being damaged when Overtime took the Truck into Overtime's possession by towing the Truck to Overtime's impound yard.

58. Overtime returned—only after receiving a fee—the Truck to Rose PDX with damage to the Truck's roof from hitting trees or overhead structures and mechanical damage from not disconnecting the driveline prior to towing.

59. Overtime was negligent as set forth in the foregoing paragraphs and in one or more of the following particulars:

a. Directly causing damage to the Truck by legally unauthorized towing and failure to properly tow the Truck without causing damage to the Truck.

b. Dereliction of duties by failing to exercise proper management or supervisory authority over any Overtime employees that caused damage to the Truck by legally unauthorized towing and failure to properly tow the Truck without causing damage to the Truck.

c. Failure to engage in the following types of mitigation:

i. releasing the Truck without unnecessary and excessive fees;

ii. towing the Truck from Overtime's impound yard to Atom or another local mechanic; and

iii. promptly resolving any disputes and damage reimbursement requests tendered by Rose PDX to minimize the Truck's operational downtime and Rose PDX's lost profits.

60. All alleged damage to the Truck took place while in Defendant's exclusive possession, custody, and control.

61. As an experienced towing company, Overtime knew or, in the exercise of reasonable care, should have known that if Overtime performed its towing duties negligently in relation to the Truck, there was a foreseeable risk that Rose PDX, as a foreseeable plaintiff, would suffer damages.

62. As an experienced towing company, Overtime knew or, in the exercise of reasonable care, should have known that failing to disconnect the driveline prior to towing would cause reasonably foreseeable damage to the Truck.

63. As a direct and proximate result of Overtime's negligence, Rose PDX has suffered

damages in an amount in excess of $75,000.00, and increasing, exclusive of interest.

**COUNT THREE**
**Trespass to Chattels**

64. Plaintiff realleges and incorporates by reference all preceding paragraphs.

65. Rose PDX lawfully leases and, therefore, had the right to immediate possession of the Truck.

66. Without justification, authority, or lawful excuse, Overtime intentionally interfered with Rose PDX's possession of the Truck by taking possession of the Truck and towing it—without sufficient legal authority—to Overtime's impound yard and refusing to release the Truck to Rose PDX unless Rose PDX paid a substantial fee.

67. Rose PDX did not consent to Overtime taking possession and control of the Truck and Overtime had no valid legal authority to do so.

68. Because of Overtime's unlawful interferrence with Rose PDX's possession of the Truck:

a. Rose PDX had to fly the Rose PDX driver back to Oregon due to Overtime;

b. Rose PDX has incurred damages due to Overtime's negligence, discussed *infra*; AND

c. Rose PDX suffered operational downtime and lost profits related to the Truck being taken from Rose PDX's possession.

69. As a direct and proximate result of Overtime's trespass, Rose PDX has suffered damages in an amount in excess of $75,000.00, and increasing, exclusive of interest.

**COUNT FOUR**
**Conversion**

70. Plaintiff realleges and incorporates by reference all preceding paragraphs.

71. Rose PDX lawfully leased the Truck.

72. Overtime wrongfully deprived Rose PDX of possession and use of the Truck when Overtime towed the Truck without authorization and the Truck was damaged by Overtime to the point of inoperability.

73. As an experienced towing company, Overtime either intended to cause damage to the truck or knew or should have known that there was a substantial likelihood that such damage would occur if the Truck was improperly towed.

74. The Truck became inoperable and therefore was converted when Overtime failed to disconnect the driveline, which damaged the Truck's transmission and clutch, causing the Truck to become inoperable.

75. Because the Truck was inoperable due to Overtime's conversion, Rose PDX had to fly the Rose PDX driver back to Oregon, and Rose PDX lost profits due to not having the Truck

76. As a direct and proximate result of Overtime's conversion, Rose PDX has suffered damages in an amount not less than $169,572.44, and increasing, exclusive of interest.

WHEREFORE, Plaintiff Rose PDX, LLC, asks the Court to award judgment in its favor and against Defendant as follows:

A. For all Counts, compensatory damages in an amount that exceeds $75,000.00, exclusive of interest and costs, and further to be proven at trial.

B. For all Counts, interest on damages at the rate of 8% per annum until paid, as applicable.

C. And for all other legal and equitable relief that this Court deems just and appropriate.

Respectfully submitted, this 17th day of August 2026.

/s/ John B. Riordan

John B. Riordan
NCBAR # 54973
Fidelity Law Group
8936 Northpointe Executive Park Drive
Suite 260
Huntersville, NC 28078
(704) 285-8111
j.riordan@theflg.com
*Counsel for Plaintiff*

**THE REST OF THIS PAGE IS LEFT INTENTIONALLY BLANK**

## VERIFICATION

My name is Mohammed Hashoosh and I am the sole member of the LLC that is the Plaintiff in the above-captioned matter. I hereby verify and declare that I have personal knowledge of the allegations contained in the Verified Complaint and the same are true and correct to the best of my personal knowledge and for those matters that are set out on information and belief, I believe them to be true.

I verify and declare under penalties of perjury that the foregoing is true and correct.

Date: 07/21/2026

Rose PDX Transportation, LLC
*Plaintiff*

BY: Mohammed Hashoosh
Sole Member